IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | Case No. 17-13036-KHK |
| PHILIP JAY FETNER, | ) | Chapter 11 |
| | ) | |
|     Debtor-In-Possession. | ) | |
| | ) | |

## DISCLOSURE STATEMENT

Debtor and Debtor-In-Possession, Philip Jay Fetner ("Fetner" or the "Debtor") filed his voluntary petition for reorganization under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Eastern District of Virginia, Alexandria Division on September 7, 2017.

## I.
## INTRODUCTION

Fetner now seeks, with the aid of this document, to have his creditors accept, and the Court confirm, the Debtor's Plan of Reorganization (the "Plan") filed contemporaneously in the case, which you will receive with this Disclosure Statement (the "Disclosure Statement") after the it has been approved by the Court.  See attached Statement written solely by Debtor-In-Possession, Philip Jay Fetner in support of this Disclosure Statement and Plan of Reorganization marked Exhibit "A".

John T. Donelan, Esquire
Virginia State Bar No. 18049
125 South Royal Street
Alexandria, Virginia  22314
(703) 684-7555
*Counsel for Philip Jay Fetner*

## II.
## PREPARATION AND PURPOSE
## OF THIS STATEMENT AND DISCLAIMER

This Disclosure Statement has been prepared and submitted by Fetner in compliance with § 1125 of the Bankruptcy Code, and F.R.Bankr.P. 3016 and 3017. The purpose of this Disclosure Statement is to supply Fetner's creditors with material information sufficient to enable them to make an informed judgment as to whether they should vote for or against the Plan; it may not be used for any other purpose. No representations concerning the Debtor, particularly as to future income, business affairs, or values of property, other than as set forth in this Disclosure Statement, are authorized by the Debtor. Any representations or inducements made to secure acceptance of the Plan which are not contained in this Disclosure Statement should not be relied upon by any creditor, and should be reported to the undersigned counsel for Fetner. The information contained in this Disclosure Statement has been supplied by the Debtor but has not been subjected to a certified audit. Nevertheless, reasonable efforts have been made by the Debtor to present accurate information.

In addition to reading this Disclosure Statement, you should also read the Plan of Reorganization itself. The Court's approval of this Disclosure Statement is not a decision by the Court on the merits of the Plan. After this Disclosure Statement has been approved by the Court, you will receive with this Disclosure Statement and the Plan a Ballot on which you should indicate your acceptance or rejection of the Plan, based upon the terms of the Plan and the information contained in this Disclosure Statement. All terms not specifically defined in this Disclosure Statement shall have the same meanings as they do in the Plan.

## III.
## VOTING REQUIREMENTS FOR PLAN CONFIRMATION

In general, in order for the Plan to be confirmed, i.e. approved, by the Court, after which it becomes binding on the Debtor and his creditors and shareholders, it must first be accepted by creditors holding at least two thirds (2/3) in amount and more than one half (1/2) in number of the allowed claims that actually vote in each impaired class of claims. However, even if the Plan is not accepted by all of the impaired classes of claims but is accepted by at least one such impaired class, then the Court may nevertheless confirm the Plan by way of a "cram-down" if the Court finds that it does not discriminate unfairly and is fair and equitable with respect to each impaired class that did not accept the Plan. The availability of cram-down is a legal matter to be resolved in the context of a hearing on confirmation of the Plan.

Only creditors whose claims are not listed as disputed, contingent, or unliquidated in the Schedules that the Debtor filed, or creditors who have timely filed a proof of claim with the Court that was not disallowed as of the date of the confirmation hearing on the Plan, have the right to vote, except that if an objection to a claim is pending at the time that the Debtor solicits acceptances of the Plan, then the holder of such claim may vote on the Plan only if the Court after notice and a hearing temporarily allows the claim in an amount which the Court deems proper for the purpose of accepting or rejecting the Plan.

## IV.
## EDUCATION OF DEBTOR AND PROFESSIONAL HISTORY

A. <u>Education of Debtor</u>

Fetner's secondary education was as follows:  he graduated as a Ranking Scholar, summa-cum-laude from Yale University in 1965 with a BA degree in history, a BA in English Law and PhD degree in International Law and Politics from Cambridge University (a five-year

3

program compressed to two years) in 1967 after winning a Henry Fellowship and from Harvard University Law School in 1970 with a JD.

B.  Professional History

Fetner was a practicing attorney for many years, first as an associate with the international law firm of Cleary, Gottlieb, Steen, & Hamilton in Paris and New York City, as general counsel with two public companies, JWU in Greenwich, Conn., and American Medicorp in Bala Cynwood, Penn., and briefly with the Legal Advisor's Office at the U.S. Department of State.  In the 1980's, Fetner served as "Of Counsel" to the international law firm of Kirkwood, Kaplan, Russin & Vecchi headquartered in Washington, D.C., after which he retired from the active practice of law.

In the 1970s, Fetner founded an organization that came to be called the African Development Group, a trade, consulting, and merchant-banking firm with offices and a presence throughout sub-Saharan Africa and headquarters located in Washington, D.C.  "ADG" was active until the early 1990s.  Its major role was the establishment and promotion of private direct foreign investment in Africa.

Since ADG, Fetner has acted as a legal consultant in the management of complex litigations, for a variety of firms, a "capture manager" and proposal writer for businesses seeking to do business with U.S. Government agencies, and a business consultant to individuals and entities, most notably in the last nine years or so with an IT company called HOPS International, Inc. (for Heuristic Optimized Processing Systems) and its successors.

Debtor is also a published writer and taught Expository Writing at Harvard University.

C. <u>Sources and Projections of Income</u>

This Plan contains projections of estimated income by Debtor earned over the next five (5) years. Broadly speaking, this income may be characterized as coming from four sources: general consultancy, litigation management, writing and publishing, and asset management. All said sources played a prominent part of Debtor's efforts within the preceding five (5) years. Debtor was paid $200,000.00 yearly by HOPS International through 2015 and served as both Acting Chairman of the Board and CEO. Debtor continues to serve as CEO to HOPS and its successor organization BD Heuristics, deferring income from his contract as financial problems have occurred with licensees. At the same time, Fetner has a management consulting contract with the sole owner of HOPS and BD Heuristics (and other business interest), Ms. Mary Forte, and was paid $250,000.00 yearly until 2015. Since then, Fetner has been voluntarily deferring most of this contract income as Ms. Forte recovers from the difficulties at HOPS and BD Heuristics. Debtor's income here and Ms. Forte's income are inextricably linked.

In his role of litigation management, Fetner has managed a large complex individual and derivative lawsuit filed by four individual plaintiffs in Chancery Court in Chicago, Illinois against the national sporting body of polo in the United States, the USPA. The lawsuit was filed in mid-2016. Debtor is currently paid $5,000.00 monthly by the plaintiffs and has a contingency fee arrangement for 30% of any net recovery. The stakes are wholesale changes of governance in the USPA and many millions of dollars in damages. In addition, Debtor has been preparing several litigations on behalf of HOPS, BD Heuristics, and Ms. Forte against former HOPS CEO, Simeon Kohl, licensees Performant Financial Corporation and Ericsson, and Merrill-Lynch with respect to the asset depletion of $23,000,000.00 in Ms. Forte's

5

accounts. Fetner will have contingency fees of 50% of net recovery of any litigation contemplated or commenced.

Debtor in the last five years has been working on the second edition of a highly successful book The African Safari (St. Martin's Press) he first published in 1987 and several new books, two of which are now ready for publication, TIPS and 100 Greatest Things. Also in this source category, Debtor has completed a film treatment of a proposed film, "Kaabong!," which project he is now able to pursue at the conclusion of the Roszel trial, described below.

Finally, Debtor has worked to maintain and protect the status of an asset in which he has an interest, a significant horse farm estate in The Plains, Virginia, and is now preparing to monetize that interest through Airbnb revenues up to or exceeding $200,000.00 annually, a one-time Fauquier County PDR Program realizing some $200,000,00, and a possible jumbo Reverse Mortgage with AAG yielding some $1,200,000.00 tax-free.

Additional information is contained in Fetner's Statement in Support of Disclosure Statement, marked Exhibit "A", pages 16-25.

## V.
## CHAPTER 11 OPERATIONS

Since his bankruptcy filing on September 7, 2017, Fetner has conducted his business affairs as Debtor-in-Possession.

A.  Assets and Liabilities

Fetner owned a membership interest and was a limited and general partner in PJF Limited Partnership (now in dissolution) which owns real property located at 7476 Stoney Hill Lane, The Plains, Virginia 20198 ("the Property"). This limited partnership was cancelled by failure to pay annual fees to the Virginia State Corporation Commission. The value of this Property is unknown at this time but the price range is between $2,000,000.00 and

6

$4,000,000.00. The Property is not owned by the Debtor but Debtor is including the Property as a guarantee of payments under the Plan, should the Plan be confirmed. Other assets of Fetner's estate include horses, vehicles, books, artwork, vehicles. Fetner also owns personal legal causes of action he values in excess of $2,000,000.00. There are no secured debts in Fetner's estate.. Unsecured debts are listed in the Schedules in the amount of $3,698,621.80, the vast majority of which are disputed.

Additional information is contained in Fetner's Statement in Support of Disclosure Statement, marked Exhibit "A", pages 10-16.

B.  Post-Petition Reorganization Efforts

Since filing in September 2017, Fetner has diligently maintained and protected his assets and sought information to support his challenges to alleged creditors. At the same time, Debtor has continued to work on his income stream, the full benefits of which should commence this fall and in 2019. These efforts were listed above in Section IV, B. More specifically, in the approximately 20 months since filing, Debtor has:

1. worked extensively with HOPS/BD Heuristics to improve its "front-end" technology visualization for future licensing;

2. worked with Ms. Forte to protect her various business interests and resume her income stream;

3. signed a new contract with the USPA litigation plaintiffs and filed an extensive Amended Complaint;

4. worked on funding ASAP (see below);

5. held preliminary discussions with National Geographic as to *The African Safari*;

7

    6. completed and edited *TIPS* and *100 Greatest Things*;

    7. filed a lawsuit in Miami, Florida against former HOPS CEO, Simeon Kohl;

    8. worked on claims against Merrill-Lynch, Performant Financial and Ericsson – all on behalf of Ms. Forte and Debtor; and

    9. worked extensively on the Coachman Farm Airbnb plan, The Fauquier PDR Program and AAG's reverse mortgage requirements.

## VI.
## BASIS OF PLAN

    A.    <u>Original Filing</u>

Fetner filed his Chapter 11 case to stop the aggressive post-judgment collection actions of Stephen S. Roszel, VII et al ("Roszel") creditor, which claim was being appealed to the Virginia Supreme Court, and a possible foreclosure attempted by Bank of America, N.A. As made clear by his Schedules, Debtor's Plan has always been to pay legitimate creditors and contest claims against Bank of America, Hotel Street Capital, LLC ("HSC"), and Roszel, along with certain parts of the IRS claim. Fetner intends to negotiate the balance due on the IRS claim and pay it within five years from the date of filing the Petition with four percent (4%) interest per annum. The Roszel claim has been appealed to the Supreme Court of Virginia. Fetner's Complaint contesting HSC's claim was filed in the Circuit Court of Fauquier County and parties are seeking to remove the Complaint to the Bankruptcy Court. It is also possible that parts of creditors' claims may be contested through the bankruptcy court objection to proof of claim procedure. All claims that survive litigation brought by Debtor will be paid pursuant to the terms of the Plan.

8

## VII.
## EFFECT OF CHAPTER 7 LIQUIDATION

    A.    General

    The requirements for confirmation of the Plan by the Court are contained in §1129 of the Bankruptcy Code. Section 1129(a)(7) therein provides that the holders of general claims must either have accepted the Plan, or will receive under the Plan at least as much as they would receive if the Debtor's assets were liquidated as of the Effective Date of the Plan and the liquidation proceeds were distributed to them as if this were a Chapter 7 liquidation case. Accordingly, the following analysis is provided to enable creditors to compare the treatment of their claims under the Plan with the probable treatment that would be obtained in a hypothetical liquidation under Chapter 7 of the Bankruptcy Code.

    B.    Liquidation Analysis

    A liquidation pursuant to Chapter 7 would leave all Creditors with virtually no recovery.  Coachman Farms would not be a part of any Chapter 7 proceedings including Debtor.  BOA might well not participate at all.  HSC would probably stand behind the IRS and administrative expenses, recovering little, if anything, and the Roszel claim would be virtually totally wiped out.  Nor is a Chapter 7 trustee likely to take on the burden and costs of pursuing Debtor's various causes of action.  The Chapter 11 reorganization plan prepared by Debtor, introducing Coachman Farms into the mix as a guaranty of substantial recovery by all qualified Creditors, is considerably more attractive to all Creditors who survive the vetting process or find a basis for a negotiated settlement with Debtor down the road.

9

# VIII.
# SUMMARY OF PROPOSED PLAN OF REORGANIZATION

A brief summary of the Plan is provided below. This Plan summary should not be relied upon for voting purposes. Creditors are urged to read the entire Plan and to consult with counsel or each other in order to fully understand the Plan. A copy of the Plan will be filed with the Clerk, United State Bankruptcy Court for the Eastern District of Virginia at 200 South Washington Street, Alexandria, VA 22314, and will be available for inspection and review. The Plan represents a proposed legally binding agreement between the Debtor and his creditors.

A.  Classification and Treatment of Claims

The Plan, in Articles II and III, classifies and treats the allowed claims of creditors and holders of interests as follows:

1.  Class 1 consists of (i) Allowed Claims for costs and expenses of administration of the Estate, as defined in § 503(b) of the Bankruptcy Code, including fees of Professional Persons approved by the Court and other post-petition operating expenses and Liquidation Expenses, and (ii) fees payable to the United States Trustee by the Debtor under 28 U.S.C. § 1930(a)(6). The U.S. Trustee's Class 1 claim shall be paid in full, in cash, from the Disbursing Account on the Effective Date. The Debtor's attorney, John T. Donelan, Class 1 claim shall be paid his Court approved fee application amounts beginning with $5,000.00 on the Effective Date and $5,000.00 on the 1st day of each month thereafter until paid. This class of claims is unimpaired.

| Type | Estimated Amount Owed | Proposed Treatment |
|---|---|---|
| Expenses Arising in the Ordinary Course of Business after the Petition Date | $0.00 | Payment in the ordinary course of business |
| The Value of Goods Received in the Ordinary Course of Business within 20 Days Before the Petition Date | | |
| Professional Fees, as Approved by the Court (Debtor's attorney, John T. Donelan) | To be determined ≥ $60,000.00 (Court approved fee applications) | $5,000 on the effective Date; $5K per month on the 1st day of each month thereafter until paid |
| Clerk's Office Fees | | |
| Office of the U.S. Trustee Fees | To be determined | Payment in full on the effective date |
| Other Administrative Expenses | | |
| **Total Class 1 Administrative Expenses** | To be determined | Payment in full on the effective date with the exception of Debtor's attorney, see above |

2. Class 2 consists of all allowed claims for secured priority taxes in the amount of $66,190.46 of government units entitled to priority under §506 and unsecured priority taxes in the amount of $28,988.31 of government units entitled to priority under §507(a)(8). The Debtor objects to the IRS' recordation of its secured tax lien on real property which is not owned by the Debtor but instead is owned by PJF Limited Partnership whose existence has been cancelled by operation of Virginia law and is now in dissolution. The IRS' lien should be removed. This claim is disputed.

After the IRS lien is removed, the two Class 2 unsecured tax claims of government units shall be entitled to priority under §507(a)(8). Each Class 2 claim shall be paid in full, in cash, from the Disbursing Account but only to the extent each is entitled to priority under §507. The IRS shall be paid in equal monthly payments from the Effective Date of the

Plan until September 6, 2022 within five (5) years of the Petition Date. This class of claims is unimpaired. The following claim shall be paid at the following annual rate of interest: Department of Treasury – four percent (4%) per annum.

| Claimant | Type | Total Claim | Secured Priority Claim | Unsecured Priority Claim |
|---|---|---|---|---|
| Internal Revenue Services ** | Taxes | $ 95,178.77 | $ 66,190.46 | $ 28,988.31 |
| **Total Class 2 Claims** | | $ 95,178.77 | | |

3. Class 3 of the Plan consists of the unsecured claim of HSC. This is not a secured claim of the Debtor but the claim is secured by the Property owned by PJF Limited Partnership in Dissolution. The Debtor has guaranteed this claim. This claim is disputed. A Complaint was filed by the Debtor, *pro se*, against HSC and multiple other defendants in the Circuit Court of Fauquier County. A Notice of Removal has been filed to remove this Complaint to the Bankruptcy Court. If litigation results in a judgment in favor of HSC this Class shall be paid pursuant to the terms of the Plan. This class of claims is impaired.

| Claimant | Claim |
|---|---|
| Hotel Street Capital, LLC ** | To Be Determined |
| **Total Class 3 Claims:** | $ - |

4. Class 4 consists of the unsecured claim of BOA-Wilmington. This is not a secured claim of the Debtor but the claim is secured by non-estate real property owned by PJF Limited Partnership in Dissolution. This claim is disputed. This claim will be litigated in the Virginia State Courts or the Bankruptcy Court through its objection to claims procedure. If

litigation results in a judgment in favor of BOA-Wilmington this Class shall be paid pursuant to the terms of the Plan. This class of claims is impaired.

| Claimant | Claim |
|---|---|
| BOA-Wilmington ** | To Be Determined |
| **Total Class 4 Claim:** | |
| | |

5. Class 5 consists of the unsecured claim of Stephen S. Roszel VII, *et al* arising from a judgment in the Fauquier County Circuit Court which was appealed by the Debtor to the Supreme Court of Virginia. This is not a secured claim of the Debtor. This claim is disputed. If litigation results in a judgment in favor of Stephen S. Roszel VII, *et al* this Class shall be paid pursuant to the terms of the Plan. This class of claims is impaired.

| Claimant | Claim |
|---|---|
| Stephen S. Roszel, VII et al ** | $815,633.14 |
| **Total Class 5 Claim:** | **$815,633.14** |

6. Class 6 consists of a general unsecured claim of the Internal Revenue Service. This class of claims is disputed. This Class 6 claim shall be paid at the rate of three percent (3%). This class of claims is impaired.

| Claimant | Claim |
|---|---|
| Internal Revenue Service | 2,655.65 |
| **Total Class 6 Claim** | $ **2,655.65** |

7. Class 7 consists of the general unsecured claims of the Debtor. This class shall be paid pursuant to the terms of the Plan. Class 7 claims shall be paid at the rate of three percent (3%). This class of claims is impaired.

| Claimant | Claim |
|---|---|
| FIA Credit Card | $ 31,553.23 |
| Rose Marie Bogley, et al | $ 4,181.32 |
| **Total Class 7 Claims** | $ 35,734.55 |

8. Class 8 consists of general disputed unsecured claims of the Debtor. This class of claims is disputed and no proof of claim was filed by the Claimants and therefore no payments shall be made. This class of claims is impaired.

| Claimant | Claim |
|---|---|
| Morrison, Ross and Whelan ** | $ - |
| **Total Class 8 Claim** | $ - |

| Summary of Liabilities | |
|---|---|
| **Type** | **Amount** |
| Administrative Expenses | TBD |
| Unsecured Priority Claims ** | $ 95,178.77 |
| Unsecured Claim of HSC ** | TBD |
| Unsecured Claim of BOA ** | TBD |
| Unsecured Claim of Roszel ** | $ 815,633.14 |
| Unsecured IRS Claim ** | $ 2,655.65 |
| General Unsecured Claims | $ 35,734.55 |
| Unsecured Disputed Claim ** | $ - |
| **Total Claims** | $ 949,202.11 |

** Disputed claims.

B. Proposed Payment Under the Plan

1. Administrative Claims shall be paid in full on or before the Effective Date of the Plan with the exception that Debtor's attorney shall be paid his Court approved fee

14

application amounts beginning with $5,000.00 on the Effective Date and $5,000.00 on the 1st day of each month thereafter until paid.

  2.  The IRS will be paid in full within five (5) years of September 7, 2017, the Petition Date, with four percent (4%) interest per annum.

  3.  HSC's unsecured claim is in dispute. A Complaint was filed by the Debtor, pro se, against HSC and multiple defendants in the Circuit Court of Fauquier County. A defendant has filed a Notice of Removal of the Complaint to the Bankruptcy Court. If litigation results in a judgment in favor of HSC, HSC shall be paid pursuant to the terms of the Plan.

  4.  BOA-Wilmington's unsecured claim is in dispute and will be litigated in the Virginia State Courts. This claim will be litigated in the Virginia State Courts or the Bankruptcy Court through its objection to claims procedure. If litigation results in a judgment in favor of BOA-Wilmington this Class shall be paid pursuant to the terms of the Plan.

  5.  The judgment order in the Stephen S. Roszel VII, *et al* arising from a judgment in the Fauquier County Circuit Court was appealed by the Debtor to the Supreme Court of Virginia. This is not a secured claim of the Debtor. If litigation results in a judgment in favor of Stephen S. Roszel VII, *et al* this Class shall be paid pursuant to the terms of the Plan.

  6.  This class of claims is disputed and Debtor agrees to pay three percent (3%) pursuant to the terms of the Plan.

  7.  This class of claims shall be paid at the rate of three percent (3%) pursuant to the terms of the Plan.

  8.  This class of claims is disputed and no proof of claim was filed by the Claimants and therefore no payments shall be made.

C. <u>Means for Implementation of the Plan</u>

The source of funds to be distributed pursuant to the Plan will be income from Debtor's four sources of income previously described in his Statement Supporting the Disclosure Statement, pages 16-25.

D. <u>Factors Bearing on the Success or Failure of the Plan</u>

The Plan is dependent upon the Debtor's ability to generate income sufficient to fund the Plan over a period of sixty (60) months.

E. <u>Litigation</u>

Fetner reserves the right to file an objection to proof of claim, using the Bankruptcy Court's objection to claim procedures against all disputed creditors.

Fetner has filed a Complaint against HSC and multiple other defendants in the Circuit Court of Fauquier County which is pending. Fetner has filed an appeal of a judgment in favor of Stephen S. Roszel, VII, *et al* in the Supreme Court of Virginia.

Fetner reserves the right to file a complaint against Bank of America, N.A./Wilmington in state court or in the Bankruptcy court using an objection to proof of claim procedure.

F. <u>Executory Contracts</u>

The Plan does not include Executory Contracts.

G. <u>Tax Consequences</u>

The Federal, State, Local, and other tax consequences that may arise as a result of the Plan to the holders of claims and interests may vary based upon the individual circumstances of each holder. Therefore, each creditor and interest holder should consult their own tax advisor to determine the treatment afforded their respective claims and interests by the Plan under federal

16

tax law, the tax law of the various states and local jurisdictions of the United States, and the laws of foreign jurisdictions. No statement in this Disclosure Statement should be construed as legal or tax advice. The Debtor and its counsel do not assume any responsibility or liability for the tax consequences that a creditor or interest holder may incur or experience as a result of the treatment of its claim or interest under the Plan.

H.  11 U.S.C. §1129(a)(15)

Under 11 U.S.C. §1129(a)(15) the court shall confirm a Plan only if all of the following requirements are met:

(15)  In a case in which the debtor is an individual and in which the holder of an allowed unsecured claim objects to the confirmation of the Plan –

(A)  the value, as of the effective date of the Plan, of the property to be distributed under the Plan on account of such claim is not less than the amount of such claim; or

(B)  the value of the property to be distributed under the Plan is not less than the projected disposable income of the debtor (as defined in section 1325(b)(2) to be received during the 6-year period beginning on the date that the first payment is due under the Plan, or during the period for which the Plan provides payments, whichever is longer.

For the purpose of this subsection, 11 U.S.C. §1129(b)(2), the condition that a Plan be fair and equitable with respect to a class includes the following requirements:

(B)  With respect to a class of unsecured claims—

(i)  the Plan provides that each holder of a claim of such class receive or retain on account of such claim property of a value, as of the effective date of the Plan, equal to the allowed amount of such claim; or

17

(ii) the holder of any claim or interest that is junior to the claims of such class will not receive or retain under the Plan on account of such junior claim or interest any property, except that in a case in which the debtor is an individual, the debtor may retain property included in the estate under section 1115, subject to the requirements of subsection (a)(14) of this section.

I. Priority Rule

In individual Chapter 11 cases, creditors get to vote to accept or reject the debtor's Plan. If the Plan is not accepted by all impaired classes, the Court can still confirm it provided at least one class of impaired claims has accepted the Plan and it (1) does not discriminate unfairly and (2) is fair and equitable with respect to each class of claims that is impaired under, and has not accepted, the Plan. As to unsecured creditors, the fair and equitable standard is met if the unsecured creditors receive payment in the full amount of their claims or, if they receive less than full payment, then no junior class retains any interest in property of the debtor. This standard is known as the absolute priority rule.

J. Section 1129(b) Election. In order to confirm the Plan, and to the extent necessary, the Debtor invokes the entitlement of § 1129(b) of the Bankruptcy Code, such that, as long as the Plan does not discriminate unfairly, and is fair and equitable, with respect to any Class of Claims that is impaired under and has not accepted the Plan, the Plan may be confirmed by the Court.

K. Recommendation and Conclusion

Fetner's Plan provides for the payment of administrative claimants in full on the Effective Date of the Plan with the exception that Debtor's attorney shall be paid his Court approved fee application amounts beginning with $5,000.00 on the Effective Date and $5,000.00

18

Case 17-13036-KHK    Doc 197    Filed 04/30/19    Entered 04/30/19 19:41:57    Desc Main
Document      Page 19 of 20

on the 1st day of each month thereafter until paid; payment to the IRS/Department of Treasury in full within five (5) years of the Petition filing date, September 6, 2022 with four percent (4%) interest per annum; payment of his general undisputed unsecured claims pursuant to the terms of the Plan which shall extend for the sixty (60) month Plan period.

The Debtor believes that the Plan is in the best interests of all creditors and the estate and urges the holders of claims entitled to vote to accept the Plan and to evidence such acceptance by properly voting and timely returning their ballots. It is recommended that creditors accept the Plan of Reorganization because it will maximize the value of the estate and provide the greatest return to unsecured creditors.

PHILIP JAY FETNER<br>
By Counsel

LAW OFFICE OF JOHN T. DONELAN

_____
JOHN T. DONELAN, ESQUIRE
Virginia State Bar No. 18049
125 South Royal Street
Alexandria, Virginia 22314
Tel (703) 684-7555
Fax (703) 684-0981
*Counsel for Philip Jay Fetner*

## CERTIFICATE OF SERVICE

I hereby certify that on the 30th day of April, 2019, a true copy of the foregoing Disclosure Statement sent first class mail, postage prepaid, to all the parties of interest and creditors on the mailing matrix. A copy of which has been filed with the Court.

____/s/John T. Donelan_____<br>
JOHN T. DONELAN

Brock & Scott
484 Viking Drive, Suite 203
Virginia Beach, VA 23452-0000

Internal Revenue Service
P.O. Box 8208
Philadelphia, PA 19101-8208

Morrison, Ross and Whelan
31 Garrett Street
Warrenton, VA 20186-0000

FIA Credit Card
P.O. Box 15019
Wilmington, DE 19886-5019

Hotel Street Capital, L.L.C.
c/oGrayson Love & Company, LLC
31 Garrett Street
Warrenton, VA 20186-0000

Rose Marie Bogley, et al
c/o Lowry J. Miller, Esquire
10400 Eaton Place, Suite 312
Fairfax, VA 22030-0000

Shellpoint Mortgage Servicing
P.O. Box 619063
Dallas, TX 75261-9063

Stephen S. Roszel, VII et al
c/o Robin C. Gulick
70 Main Street, Suite 52
Warrenton, VA 20188-0000

Thomas J. Ross, II, Trustee
31 Garrett Street
Warrenton, VA 20186-0000

John P. Fitzgerald, U.S. Trustee
Office of the United States Trustee
1725 Duke St., Suite 650
Alexandria, VA 22314

Jack I. Frankel, Esquire
Office of the United States Trustee
1725 Duke St., Suite 650
Alexandria, VA 22314

Robert M. Marino, Esquire
Redmon Peyton & Braswell, LLP
510 King St., Suite 301
Alexandria, VA 22314-3143

HOPS International, Inc.
15105 NW 77th Avenue
Miami Lakes, FL 33014

Mary Forte Goodman
8080 Enon Church Road
The Plains, VA 20198

PJF Limited Partnership
7476 Stoney Hill Lane
The Plains, VA 20198

Richard A Lash, Esquire
Buonassissi, Henning & Lash
1861 Wiehle Ave., Suite 300
Reston, VA 20190

Ronald J. Aiani, Esquire
Ronald J. Aiani, P.C.
86 E. Lee Street
Warrenton, VA 20186

Robert E. Kelly, Esquire
Buonassissi, Henning & Lash
1861 Wiehle Ave., Suite 300
Reston, VA 20190

Robert K. Coulter, Esquire
Office of the US Attorney
2100 Jamieson Avenue
Alexandria, VA 22314

Andrew Justin Narod, Esquire
Bradley Arant Boult Cummings
1615 L St., Ste. 1350
Washington, D.C. 20036